*524 SENIOR JUSTICE STEPHENSON
delivered the opinion of the Court.
In this appeal, we determine whether the trial court erred in ruling that the plaintiff’s action is barred by Code § 65.2-307, the exclusivity provision of the Virginia Workers’ Compensation Act, Code § 65.2-100 et seq. (the Act).
I
Lisa C. Peck, Administratrix of the Estate of William R. Peck, Jr., deceased (Plaintiff), filed a wrongful death action against Safway Steel Products, Inc. (Safway), alleging that her decedent’s death was proximately caused by Safway’s negligence and breach of warranties. Safway filed a plea in bar, alleging that the Plaintiff’s action is precluded by the exclusive remedy under the Act. The trial court sustained Safway’s plea and dismissed the Plaintiff’s action. We awarded the Plaintiff this appeal.
II
The facts are undisputed. On November 25, 1997, William R. Peck, Jr., while in the employ of White Construction Company (White), was killed when he fell from scaffolding on which he was working. The Plaintiff and her two daughters applied for and received workers’ compensation benefits from White and its insurer.
At the time of the accident, White was the general contractor on a project to repair and replace brick masonry on the exterior of Sanger Hall on the campus of the Medical College of Virginia. Sanger Hall is a 12-story building owned by Virginia Commonwealth University (VCU).
Pursuant to its contract with VCU, White agreed to “provide and pay for all material, labor, tools, equipment. . . and other services or facilities of every nature whatsoever necessary to execute completely and deliver the Work within the specified time.” White had discretion regarding the means and method of completing the contracted work.
White engaged Safway to supply and install scaffolding for the project. The subcontract between White and Safway provided the following:
THE WORK: Subcontractor shall furnish all supervision, labor, materials, tools, equipment and services, permits, fees, *525 and taxes required by the Contract Documents in the following division(s)/section(s) together with all work reasonably infer-able therefrom: - Furnish, engineer and erect all scaffolding per contract document requirements including stair tower to roof and equipment hoist. Erect first two decks for two months. Erect remaining scaffolding to roof for an additional two months. There shall be two working deck levels available at all times and an additional non loaded deck for logistics purposes. There are to be twelve additional deck moves as requested by contractor. Rental time starts when scaffolding is complete and ready for use.
The size and height of the scaffolding system required Safway to tie the scaffolding to the building. This was accomplished by drilling into the brick walls and installing anchors. The scaffolding system, however, could support only two working deck levels at one time. Therefore, as work progressed, White called on Safway to remove the walk boards, brackets, and other equipment comprising the working decks and to reassemble them at different locations within the system. All deck moves were performed at White’s direction, and Safway provided all labor for the moves. Although the subcontract originally called for Safway to provide on-site labor for twelve deck moves, problems discovered at the site required change orders to cover additional deck moves. Including the extra work required by the change orders, Safway performed over 5,000 man-hours of labor in erecting, modifying, and dismantling the scaffolding system.
III.
Code § 65.2-307 provides that the rights and remedies granted under the Act “shall exclude all other rights and remedies” of an employee or his estate at common law or otherwise. The only exception to this exclusivity provision is set forth in Code § 65.2-309(A), which states, in pertinent part, that an employee or his personal representative can maintain an action at law against the person who caused the injury, provided such person is an “other party.” We have said that, to be an “other party,” a defendant must have been a stranger to the trade, occupation, or business in which the employee was engaged when he was injured. See, e.g., Pfeifer v. Krauss Construction Co., 262 Va. 262, 267, 546 S.E.2d 717, 719 (2001); Fowler v. International Cleaning Service, 260 Va. 421, 428, 537 S.E.2d 312, 315 (2000). Thus, in the present case, we must determine whether *526 the trial court correctly ruled that Safway was engaged in White’s trade, occupation, or business, thereby barring the Plaintiff’s action.
The Plaintiff contends that Safway was a stranger to White’s work and, therefore, an “other party” subject to suit. The Plaintiff asserts that, in leasing, delivering, and installing scaffolding, Safway’s conduct was merely “an act of delivery by [a] subcontractor and is not tantamount to being engaged in the trade, business or occupation of the general contractor.” The Plaintiff relies on a number of cases in which we have held that a subcontractor that merely delivers materials or equipment to a job site is not engaged in the general contractor’s work. See, e.g., Yancey v. JTE Constructors, Inc., 252 Va. 42, 471 S.E.2d 473 (1996); Hipp v. Sadler Materials Corp., 211 Va. 710, 180 S.E.2d 501 (1971); Burroughs v. Walmont, 210 Va. 98, 168 S.E.2d 107 (1969).
In Burroughs, the plaintiff, an employee of a trucking company that delivered plasterboard to a construction site, was injured while carrying the materials into one of the houses being constructed by the general contractor. 210 Va. at 99, 168 S.E.2d at 108. The trucking company had agreed to deliver and stack specified quantities of the plasterboard in the rooms in the various houses under construction. Id. at 98, 168 S.E.2d at 108. The plaintiff sued the general contractor to recover for his injuries. We held that “the stacking of [plasterboard] in the several rooms constituted the final act of delivery, not an act of construction.” Id. at 100, 168 S.E.2d at 108. Consequently, the plaintiff was not engaged in the general contractor’s trade, business, or occupation, and, therefore, the general contractor was an “other party” and subject to being sued. Id., 168 S.E.2d at 109.
In Hipp, the plaintiff was injured by an employee of Sadler Materials Corporation (Sadler), a subcontractor engaged to furnish and pour concrete at a job site. The plaintiff was an employee of another subcontractor and was injured when struck by a concrete truck. 211 Va. at 710, 180 S.E.2d at 501. We held that the plaintiff could maintain an action against Sadler. In so holding, we explained that “Sadler was required only to deliver concrete where directed, not to spread or finish the concrete,” and that, in performing Sadler’s obligation, its employee was performing “the final act of delivery, not an act of construction constituting the trade, business or occupation of the general contractor.” Id. at 711, 180 S.E.2d at 502.
Finally, in Yancey, a general contractor was engaged by the Virginia Department of Transportation to design and install a sound *527 barrier along an interstate highway. The general contractor engaged a subcontractor to design, manufacture, and deliver concrete wall panels to the job site. 252 Va. at 43, 471 S.E.2d at 474. The subcontract also required the subcontractor to provide on-site patching for materials delivered in a damaged condition. Id. at 44, 471 S.E.2d at 475. The plaintiff, an employee of the subcontractor, was injured while he was inspecting one of the panels for any damage. Id. at 43, 471 S.E.2d at 474. We held that the plaintiff was not engaged in the general contractor’s trade, business, or occupation when he was injured. In so holding, we concluded that the plaintiff’s inspection and patching activities “were the final acts of delivery required by the contract.” Id. at 45, 471 S.E.2d at 475.
Safway contends, on the other hand, that, under the facts in the present case, it was not a stranger to White’s trade, occupation, or business. Thus, it was not an “other party” subject to being sued. Safway relies primarily upon our holding in Rea v. Ford, 198 Va. 712, 96 S.E.2d 92 (1957).
In Rea, a general contractor was engaged to construct a high school building. The general contractor rented from Woodrow W. Ford a crane, an operator, and a helper to hoist into place certain steel trusses necessary for the building’s construction. 198 Va. at 713, 96 S.E.2d at 93. The trusses were fastened to the structure by the general contractor’s employees. While the crane operator was using the crane to position a truss, the truss fell, lrilling Rea, an employee of the general contractor. Id. at 714, 96 S.E.2d at 93-94. Rea’s widow and personal representative brought a wrongful death action against Ford.
We held, in Rea, that Ford was not a stranger to the general contractor’s business, and, therefore, Rea’s personal representative was precluded from suing Ford. We explained that, “in furnishing the equipment and crew for the purpose of erecting the steel structure[,] Ford was a subcontractor engaged in an essential part of the work which the principal contractor had to do.” Id. at 717, 96 S.E.2d at 96.
In the present case, we reject the Plaintiff’s contention that Safway was just a supplier of materials. To the contrary, we think Safway’s duties extended well beyond mere delivery. Safway’s contract with White required it to design and erect a massive, complex, 14-level scaffolding system, which included an equipment and materials hoist and a stair tower to the roof of the building. Additionally, Safway was required to provide two working deck levels at all times. *528 Safway, in fulfilling its contractual obligations, including those imposed by change orders, performed 16 full deck moves and 13 half deck moves. In erecting, modifying, and dismantling the scaffolding system, Safway provided over 5,000 man-hours of labor. Clearly, Safway was engaged in an essential part of the work that White was required to perform under its contract with VCU.
Thus, we hold that Safway is not an “other party” under the Act. Therefore, the trial court properly ruled that the Plaintiff is precluded from maintaining a wrongful death action against Safway.
Accordingly, we will affirm the trial court’s judgment.

Affirmed.