## Richmond

Alton W. Bosher, Individually, Etc. v. Norvell T. Jamerson.

November 28, 1966.

Record No. 6241.

Present, All the Justices.

*J. W. Morris, III* (*Jack B. Russell; Browder, Russell, Little & Morris*, on brief), for the plaintiff in error.

*Robert Cantor* (*Willard I. Walker; Cantor and Cantor; McGuire, Woods and Battle*, on brief), for the defendant in error.

Gordon, J., delivered the opinion of the court.

We have again the question whether a person who has received workmen's compensation for injuries received during the course of

his employment can sue the employer of the tort feasor who caused the injuries.

Norvell T. Jamerson was injured while working for his employer, Re-Com Corporation. The injury happened when Jamerson was struck by a truck owned by Alton W. Bosher and operated by Bosher's employee Fred Granderson. Jamerson applied for and received compensation under the Virginia Workmen's Compensation Act from his employer, Re-Com Corporation, or its insurance carrier. Then Jamerson brought this tort action against Bosher alleging that his injuries were caused by the negligence of Bosher's employee Granderson.

Bosher filed a plea asserting that Jamerson had no right to maintain the action because it was barred by the Virginia Workmen's Compensation Act. After hearing evidence, the trial court overruled the plea by order entered June 24, 1963. Bosher appeals from that order.[1]

The trial judge made these findings of fact:

"1. Re-Com, as general contractor, was under contract with Reynolds [Metals Company] to construct an expansion of the latter's Container Development Center, under which contract it was expressly stipulated that Re-Com should supply all labor, materials, equipment and services for the job and in connection therewith was to 'receive, unload, warehouse, and haul to the job site, all material you will supply for the work.'

"2. During the performance of its said contract Re-Com ordered from Southern Materials two loads of sand to be spread beneath the foundation of the project in question. One of these is the load here involved.

"3. Southern Materials had two methods of selling materials, (a) pick up by purchaser at Southern's premises, and (b) delivery by Southern Materials to purchaser at job site. The differential in price was the cost to Southern of delivery to job site. Procedure under method (b) upon reaching job site was to dump or spread at such location and in such manner as directed by purchaser or his representative on the job site.

"4. In the case at bar method (b) was followed.

"5. For delivery of this order—as in the vast majority of all other

---

(1) After the plea was overruled, the parties went to trial on the merits. On April 30, 1965, the court entered final judgment for Jamerson against Bosher in the amount of $6,450 in accordance with the verdict of the jury. Bosher appeals also from that judgment on the ground that the court erred in overruling the plea.

orders—Southern used a truck and driver furnished by the defendant Bosher. Under the standing arrangement between Bosher and Southern, while Bosher hired, fired and paid the driver of his truck, the driver and truck were under the exclusive control of Southern. The driver in this, as in other cases, received his instructions from the Southern dispatcher. Here he was told to deliver his load of sand to the Re-Com job site and to deliver, dump or spread as directed by the Re-Com supervisor.

"6. Upon reaching the job site defendant's driver, Granderson, was told by the Re-Com superintendent to take the load into the foundation area and to spread in a certain manner. He was also told by the superintendent how to maneuver his truck into the foundation area.

"7. During the spreading of the sand Granderson struck and injured the plaintiff."

Neither party objected to the trial judge's factual findings. We believe it appropriate to amplify them in only a few respects.

Re-Com ordered the sand because its contract with Reynolds required a "6″ (inch) sand base" under a concrete floor. To transport the sand to the construction site, Bosher furnished a dump truck equipped with chains on its tailgate that could regulate the spreading of sand. Re-Com's superintendent directed Granderson, Bosher's driver, to back his truck over a temporary ramp across a retaining wall that enclosed the foundation area. The accident happened while Granderson was maneuvering his truck inside the foundation area to carry out the superintendent's instructions concerning the spreading of the sand.

Code § 65-37[2] provides in effect that the rights and remedies granted under the Workmen's Compensation Act shall exclude all other rights or remedies of the employee to recover for injury incurred during the course of his employment. Code § 65-38[3] recognizes, however, that the employee can maintain an action at law against the person who caused the injury, provided such person is an "other party"

(2) Va. Code Ann. § 65-37 (1950).
(3) Va. Code Ann. § 65-38 (Supp. 1966), which provides in part: "The making of a lawful claim against an employer for compensation under this Act for the injury or death of his employee shall operate as an assignment to the employer of any right to recover damages which the injured employee or his personal representative or other person may have against any *other party* for such injury or death, and such employer shall be subrogated to any such right and may enforce, in his own name or in the name of the injured employee or his personal representative, the legal liability of such *other party*. * * * " [Emphasis supplied]

within the meaning of Code § 65-38. The question before us therefore is whether Bosher, who was responsible for the acts of his employee Granderson, was an "other party".

The test is whether at the time of the accident Granderson was performing work on behalf of his employer, Bosher, that was part of the trade, business or occupation of Jamerson's employer, Re-Com Corporation. If Granderson was performing such work, Bosher, though an independent contractor, is not an "other party" against whom Jamerson's right of action is preserved under the Workmen's Compensation Act, and Jamerson's right to recover for the injury is limited to the compensation provided under the Act. See *Floyd, Administratrix* v. *Mitchell*, 203 Va. 269, 274, 123 S.E.2d 369, 372 (1962).

The decision in this case is controlled by *Floyd, Administratrix* v. *Mitchell, supra*. In that case Glamorgan Pipe and Foundry Company hired Powell, a contract carrier, to transport Glamorgan's pipe to its customers. Powell's employee Mitchell assisted Glamorgan's employees in loading pipe onto Powell's tractor-trailers. Floyd, an employee of Glamorgan, was struck and killed by a tractor-trailer owned by Powell and driven by Mitchell. The accident happened in Glamorgan's shipping yard while Mitchell was backing the tractor-trailer to the loading point. Floyd's administratrix received compensation under the Virginia Workmen's Compensation Act. Later, she brought a wrongful death action against Mitchell and Powell.

We held that Floyd's administratrix could not maintain the action at law because Mitchell and Powell were not "other parties" within the meaning of Code § 65-38. At the time of the accident, Mitchell was engaged in an essential part of Glamorgan's business, the loading of pipe on vehicles for transportation to its customers. In doing this Mitchell was not a volunteer, but was carrying out his duties as an employee of Powell.

In this case, Re-Com's contract with Reynolds required it to lay a six-inch sand base over the foundation area. Bosher, who undertook to deliver the sand ordered by Re-Com, was obligated to "spread [the sand] at such location and in such manner as directed by purchaser [Re-Com] or his representative on the job site". Furthermore, Bosher's driver Granderson was instructed "to deliver, dump, or spread as directed by the Re-Com supervisor". Granderson was engaged in the spreading operation inside the foundation area, as directed by the Re-Com supervisor, when he struck and injured

Jamerson. At that time, Granderson was performing work that was part of the trade, business or occupation of Re-Com. Consequently, neither Granderson nor Bosher was an "other party" within the meaning of Code § 65-38. Jamerson's tort action against Bosher was therefore barred by Code § 65-37, and the trial court should have sustained Bosher's plea.

This conclusion is consistent with the reasoning in *Shook Company* v. *Barksdale*, 206 Va. 45, 141 S.E.2d 738 (1965), a case relied upon by counsel for Jamerson. In that case Barksdale, an employee of Bolt, was injured because of the negligence of an employee of Buffalo Shook Company while Barksdale was assisting Buffalo Shook's employee in an unloading operation in Buffalo Shook's lumber yard. We upheld Barksdale's right to maintain a tort action against Buffalo Shook Company and its employee, even though Barksdale had received workmen's compensation from his employer, Bolt.

The decision in the *Shook Company* case turned on the fact that Bolt and his employee Barksdale (the plaintiff) had no obligation to unload the truck. Buffalo Shook's employee, by unloading the truck, did not become engaged in the trade, business or occupation of Bolt. The defendants, Buffalo Shook and its employee, were therefore "other parties".

Conversely, the defendant in this case, Bosher, and his employee Granderson were obligated to spread the sand. By engaging in the spreading operation on behalf of his employer, Granderson engaged himself and his employer in the trade, business or occupation of Re-Com. Therefore, Granderson and Bosher were not "other parties".

Our order will reverse the judgment for the plaintiff, Norvell T. Jamerson, and enter final judgment for the defendant, Alton W. Bosher.

*Reversed and final judgment.*